ALLEN et al., Adm'rs, vs. SMITH, Ex'r.

1. PRACTICE IN CHANCERY: *Proceedings on lost instrument.*
   In a proceeding in chancery on a lost instrument, affidavit of the loss is not necessary. Sec. 66, ch. 133, Gould's Digest, relates exclusively to proceedings at law.

2. — Objection for want of the affidavit in such case, if good, should be made by motion, and is no ground of demurrer.

3. VENDOR'S LIEN: *Nature of proceedings to enforce.*
   A proceeding against the administrator and heirs of a deceased party, to foreclose a vendor's lien that was reserved in the deed, is not an action against the personal representative to have satisfaction out of the personal assets; and, although the personal representative is made a party, the object of the proceeding is to subject real estate, under a contracted lien, to the payment of a debt, and the heirs are the real parties in interest.

4. — In such a proceeding it is unnecessary to probate the claim before suit.

NOTE. — See *Linthicum, Ex'r, et al. v. Topscott, Adm'r, et al.,* 28 Ark., 267. — REP.

APPEAL from *Arkansas* Circuit Court.
Hon. HENRY B. MORSE, Circuit Judge.
*Garland,* for appellant.
*Bell & Carlton, contra.*

WALKER, J. On the 9th of October, 1866, Brazel B. Smith, as administrator of the estate of Petyma Smith, filed his bill of complaint in the Arkansas circuit court against Thomas H. Allen and Ira M. Hill as administrators of the estate of Lewis Shanks, deceased, and the unknown heirs of Shanks, in which it was alleged that on the 21st day of December, 1858, his intestate, Petyma Smith, with several other parties, for the consideration of $24,000, to be paid at different dates and amounts, to the parties grantors,

one of which notes was executed by Shanks for the sum of $5,000, due one year from the 10th of March next thereafter, with eight per cent. interest from date, and made payable to intestate, Petyma Smith, one of the grantors, granted, bargained and sold to the said Lewis Shanks, certain lands therein described. It is further alleged that the note is due and unpaid; but has been lost or destroyed. That Shanks died intestate, and left children and heirs, who are unknown to plaintiff; that by the terms and condition of the deed a specific lien was created and reserved upon the land so conveyed, for the payment of the purchase money, of which the $5,000 note was a part, makes the administrator and heirs, who are described as unknown defendants, parties defendants, and prays that the debt and interest may be adjudged to him as such administrator, and if not paid, day being given for the same, that the equity of redemption be foreclosed and the lands sold.

When parties are made defendants and described as unknown defendants, without naming them, it is made necessary that the complainant should file with his bill an affidavit that such defendants are in fact unknown to him, because if he knows the names of the parties, he should sue them by name. Gould's Dig., sec. 7, ch. 28.

No such affidavit was in this case filed, and a failure to do so became a ground of exception upon which, on appeal to this court, the case was reversed and remanded for further proceedings (see 25 Ark., 496). The cause was remanded, and upon alleged errors in proceeding to decree without having the infant defendants before the court, upon a second appeal the case was again reversed. Upon the return of the case to the court below, the complainant, upon leave granted, amended his bill and brought the heirs of Shanks before the court by their proper names, by which the objection to the

bill in this respect was obviated. The amended bill was sworn to, and there was also an affidavit filed, that the defendants were nonresidents of the state, and an order of publication was taken. The order was executed by publication, a copy of which was verified and filed ; a guardian *ad litem* appointed, who filed his written consent to act as such, and answers were filed by him for them. Two of the heirs, Louden and wife, also filed their answer, and with the infant defendants, by their guardian, filed their demurrer to complainant's bill. Neither of the grounds assigned for demurrer questioned the sufficiency of the bill, unless the failure of complainant to file an affidavit of a want of knowledge of the residence of such unknown defendants with his bill, as required in sec. 7, ch. 28, Gould's Dig., should be held to relate back to the sufficiency of that part of the bill which described them as unknown defendants, and should be considered such ; but as the amended bill fully supplied this defect by making Shank's heirs defendants by their proper names, the necessity for an affidavit, as required by sec. 7, ceased to exist.

The first ground assigned for demurrer is: That the instrument sued upon as the certificate or affidavit of Petyma Smith was made before an officer unknown to the laws of Arkansas.

We find on the record a statement purporting to be an affidavit of the loss and nonpayment of the note described in the complainant's bill, and certified as having been sworn to before one George W. Hannah, who styles himself captain and provost marshal. This paper, as an affidavit, is certainly worthless, and if an affidavit of the facts set forth in it were necessary, we might hold the objection well taken. But we are aware of no statute which requires that such affidavit should be made, in an action in equity, to subject the lands of an intestate to the payment of a debt secured by a mortgage

lien. Sec. 66, ch. 133, Gould's Digest, relates exclusively to proceedings at law, and was intended to mitigate the rigors of the common law, which denied a right of action on lost bonds; because under the common law practice, profert was necessary, which could not be given if the bond be lost. But if such was not the case, and such affidavit was proper, it would form no ground of demurrer to the bill, although it might be taken advantage of by motion.

The second ground, as cause of demurrer, is that there is no affidavit of the loss of the instrument sued upon. This is but a repetition of the first ground, which we have held insufficient.

The third ground assigned is, that complainant failed to make proof of the nonpayment of the claim exhibited against the estate of Shanks, before the commencement of the suit. This ground is not sustained by the record. There was filed with the bill the following affidavit:

"STATE OF ARKANSAS — *County of Jefferson.* — I, Brazel B. Smith, administrator of Petyma Smith, deceased, do solemnly swear that nothing has been paid or delivered towards the satisfaction of the above demand, and that the sum of $5,000 above demanded, with eight per cent. interest from the 22d of March, 1859, is justly due. (Signed) B. B. SMITH.

"Sworn to before me, an acting justice of the peace within the state aforesaid, this 28th day of July, 1866.

"(Signed) W. D. JOHNSON, J. P."

This affidavit is a literal copy of that prescribed in Gould's Digest, sec. 102, ch. 4, and is in all respects such as would have been necessary if this claim had been presented for allowance in the probate court.

But the action in this case, while it is for the payment of a debt due by the intestate Shanks, is not an action against his personal representatives, to have satisfaction out of his per-

sonal assets; and although his personal representatives are made parties, the action is to subject real estate, under a con-tracted lien, to the payment of a debt, in which the heirs are the real parties in interest.

STORY, in his Equity Pleading, 246, says: "If the mort-gagor, who is the owner of the fee, should die, his heir is an indispensable party to a bill to foreclose: so that, if he be without the jurisdiction of the court, the cause cannot be pro-ceeded in. But, ordinarily, it is not necessary to bring the personal representative of the mortgagor in such case before the court; for the heir alone has the right to the equity of re-demption, which it is sought to foreclose, and the mortgagee is under no obligation to intermeddle with the personal assets, or seek an account thereof."

In the case of *Haskell et al. v. Sevier, Adm'r of the estate of Jordan*, the main question, as in this case, was whether the holder of a debt, who has, in the lifetime of the debtor, con-tracted for a specific lien on real estate for its payment, shall, after the death of the debtor, at his election, pursue his rem-edy against the land for payment, or shall be required to abandon it and take his recourse against the personal repre-sentatives of the deceased debtor. In that case, Jordan exe-cuted to Smith his notes for the payment of a sum of money thereafter to become due, and also executed to Smith his deed of mortgage to secure the payment of the same. Afterwards, and before all of the notes were paid, Jordan and Smith died. Haskell, the administrator of Smith, filed his bill against Sevier, the administrator of the estate of Jordan and his heirs, to foreclose the equity of redemption and sell the lands. Sevier insisted that Haskell should probate and class his debt with other creditors for payment out of the whole estate; whilst it was insisted, on the part of Haskell, that his intes-tate, in the lifetime of Jordan, had contracted for a lien upon

the lands, had a right at his election to file his claim for probate with other creditors or pursue his remedy for satisfaction out of the lands. This was the main question presented for our consideration, and it was held that the death of Jordan did not affect the rights of Smith, acquired under his contract of lien, which, if valid before Jordan's death, remained so afterwards; that the land at the time of Jordan's death was incumbered with Smith's debt, and brought Smith within the rule that he who is first in time, who has incumbered the property with his own debt when added to his equal equity in other respects, makes his the superior equity, and it entitles him to satisfaction out of the particular estate thus incumbered. *Haskell et al. v. Sevier et al.*, 25 Ark., 152.

The objections taken by defendant's counsel seem to have arisen out of a misconception of the real grounds of this action, which is not against an estate for satisfaction out of the personal assets, but to obtain a satisfaction out of a particular estate, which had been, by contract, incumbered in the lifetime of the debtor with its payment.

Holding, as we do, that the causes for demurrer were not well taken, and consequently that the bill is sufficient to entitle the complainant to a decree, if proven, we will turn our attention to the remaining question: Have the facts been sufficiently proven to entitle the complainant to a decree in his favor?

An interlocutory decree by default was taken against the administrators. Two of the heirs appear and answer. The material fact denied is that the debt is due; if not, the heirs will of course be protected.

The recitals in the deed furnish very satisfactory evidence of most of the facts in issue. They show that a note for $15,000 was executed by Lewis Shanks, payable to Petyma Smith, complainant's intestate; the date of the note, the time

when due and the rate of interest, are all set forth, and that the note was executed in part consideration for the payment of the land therein conveyed to Shanks, and that the contracting parties therein declare that the deed was executed, in the language of the deed, " with the understanding of all the parties that a lien is reserved upon the land until the purchase money is fully paid off." In addition to these facts shown by the deed, which is duly authenticated and made an exhibit in the case, the deposition of the administrator, Smith, which appears to have been regularly taken, is to the following effect: That although not present when the deed was executed, he had been afterwards informed by his intestate, that such a note was executed as that described in the deed; that he knew of his own knowledge that the note was in existence shortly before the federal forces took possession of Pine Bluff; after which intestate told witness that she had been robbed of that and other valuable papers; that intestate was his mother, and after her death, he searched amongst her papers, and in trunks and all places where papers were likely to be kept, and could not find the note; believed it to be lost or destroyed.

This evidence well sustains the facts set forth in the deed and averred in the bill. In view of which the decree in the court below in favor of complainant will be sustained.

Let the decree be affirmed.